UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| AMERICAN MAPLAN CORPORATION, d/b/a Battenfeld-Cincinnati USA, | |
| Plaintiff, | |
| v. | CASE NO.: 6:17-cv-01075-JTM-GEB |
| HEBEI QUANEN HIGH-TECH PIPING CO., LTD.; J-M MANUFACTURING COMPANY, INC.; and WALTER WANG, | |
| Defendants. | |

**SPECIALLY APPEARING DEFENDANTS WALTER WANG AND J-M MANUFACTURING COMPANY INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION**

Specially appearing Defendants Walter Wang ("Mr. Wang") and J-M Manufacturing Company, Inc. ("JM Eagle") (collectively "Defendants") submit this Reply Memorandum of Law in support of their motion to dismiss the Complaint of American Maplan Corporation d/b/a Battenfeld-Cincinnati USA ("Plaintiff" or "Maplan") pursuant to F.R.C.P. Rule 12(b)(2) (the "Motion").

## I.    INTRODUCTION.

By their Motion, Mr. Wang and JM Eagle demonstrated that no general jurisdiction over them exists in this forum since neither has any contacts or presence whatsoever in Kansas.  Similarly, the Motion demonstrated that no specific jurisdiction exists because, by Plaintiff's allegations in its own Complaint, all of the alleged

1378461

misconduct by Mr. Wang and JM Eagle giving rise to Plaintiff's tort claims for fraud and intentional interference with contract occurred in Los Angeles and never in the forum Kansas.  Indeed, neither Mr. Wang nor any representative of JM Eagle ever had any meeting or contact in Kansas regarding the subject of Plaintiff's supply of extrusion equipment to China at all.  Rather, as detailed in the supporting declarations of Mr. Wang ("Wang Decl.") and Kaider Liao ("Liao Decl."), these meetings were purposefully directed to Los Angeles by the German-based holding company of the international Battenfeld-Cincinnati group of companies (the "Battenfeld Group") whose CEO was the Group's decision-maker at these meetings.[1]  Similarly, Mr. Wang and JM Eagle demonstrated in their Motion that the significant burden associated with litigating in Kansas offends additional notions of fair play and substantial justice.

In its Opposition, Plaintiff does not confront—let alone refute—any of the controlling law or facts cited by Defendants for dismissal on these jurisdictional grounds. The Opposition is devoid of any argument that general jurisdiction exists and accordingly, the absence of any general jurisdiction stands as uncontested.  Plaintiff's Opposition also does not and cannot refute the fact that the very same meetings and contacts identified in its own Complaint as forming the basis of its tort claims **all**

---

[1] While the new CEO of Maplan, Paul Godwin attests in his declaration ("Godwin Decl.") that his company was not a subsidiary of BC Extrusion Holding GmbH ("BC Extrusion") in the pertinent time period (Godwin Decl., ¶ 5), Plaintiff's own Complaint confirms that its CEO Jürgen Arnold ("Arnold") sat on the Board of Directors of Maplan in this time frame (Compl. at ¶ 17).  And, all of the key correspondence bearing upon the Battenfeld Group's supply of extrusion equipment to China—both in the pertinent 2012 period identified in the Complaint and thereafter—was directed to, and sent from BC Extrusion in Germany, not Maplan (*see* Wang Decl., Exhs. B-G).

2

**occurred in Los Angeles**.  (*See* Compl. at ¶¶ 12-14, 20-22; Wang Decl., ¶¶ 10-20; Liao Decl., ¶¶ 9-11, 19).

Instead, Plaintiff resorts to a variety of contrived arguments to support specific jurisdiction and divert the attention of the Court, but, in every instance, they are unavailing.

First, and most prominently in its Opposition, Plaintiff relies primarily on non-Kansas legal authority for the novel proposition that—regardless of privity of contract and due process—any conduct by the Defendants "closely related" to the contract between Hebei Quanen High Tech Piping Company, Ltd. ("Hebei Quanen") and Plaintiff for supply of the extrusion equipment and the disputes arising therefrom means that the forum selection provision in that contract applies to Mr. Wang and JM Eagle.  The fatal defect in this argument is that Kansas forum law applies to this Motion (not Second or Third Circuit law) and the single Kansas case addressing this theory, *Cent. Transp. Serv. v. Cole*, 2013 WL 6008303 (D. Kan. Nov. 13, 2013) ("*Cole*") rejected the concept on grounds directly applicable to the instant case.

Specifically, after noting that the concept had no precedent in Tenth Circuit law and ran contrary to due process requirements, the *Cole* court rejected the application of the concept because (1) the contract containing the forum selection provision did not exist at the time of the out of forum defendant's alleged tortious conduct and (2) at most, knowledge of the forum selection provision would give rise to foreseeability that the forum selection provision might apply but "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *Cole*,

2013 WL 6008303 at *5.  Even if this "closely related" concept existed in the Tenth

Circuit (which it does not), the same concerns mandating its rejection in *Cole* apply with

equal force in this case.  In particular, the tortious conduct primarily alleged against Mr.

Wang and JM Eagle predated any invoices containing the forum selection term and

condition which accompanied the supply of the equipment in 2013.  (*See* Compl. at ¶¶ 2-

3, 12-18, 20-22, 27.)  And even if knowledge of the provision existed, it gives rise only to

foreseeability of such provision being invoked which, as the *Cole* Court noted, is not

sufficient for specific jurisdiction.

　　　　Plaintiff's only remaining Opposition arguments are all to the effect that Plaintiff's

location in Kansas and the harm occasioned to it in Kansas as a result of this location are

sufficient for specific jurisdiction.  As set forth in the Motion, Plaintiff is wrong.  To the

contrary, cases in the Tenth Circuit have repeatedly found that the mere allegation that

defendant tortiously interfered with contractual rights or committed other business torts

causing injury to a forum resident does not establish jurisdiction.  Instead, the location of

the parties' negotiations and course of dealing must be scrutinized to determine if the

defendant purposely availed itself of the benefit of Kansas laws.  *See Burger King Corp.*

*v. Rudzwicz*, 471 U.S. 462, 478-79 (1985); *Grynberg v. Ivanhoe Energy Inc.*, 490 Fed.

Appx. 86, 100 (10th Cir. 2012); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079

(10th Cir. 1995).

　　　　Moreover, even as to the Plaintiff's primary reliance upon harm and injury caused

in Kansas, the Complaint allegations do not bear out such alleged tortious injury in

Kansas.  To the contrary, the allegations of harm occasioned by the alleged tortious

conduct of these Defendants are focused on the <u>European-based</u> affiliates within the "battenfeld-cincinnati corporate family" —not the US affiliate in Kansas.   Specifically, by the allegations in Plaintiff's own Complaint, the damages flowing from the non-payment of the $4 million out of total invoices of $38 million owed by Hebei Quanen (*see* Motion at 12) are tied to negative impacts upon a bank covenant arrangement entered into by the "battenfeld-cincinnati corporate family" with West LB Germany (Compl. at ¶ 42) resulting in the "then-ultimate parent of the battenfeld-cincinnati corporate family Shogun Sweden Holding AB Sweden" ("Shogun") losing an anticipated sales price of "tens of millions of Euros" and instead recovering only one Euro in a distressed sale transaction in December 2015 (*id.* at ¶ 47).   This alleged harm is far removed from Kansas.[2]

Finally, Plaintiff also relies upon alleged harm suffered in Kansas as the main reason for asserting in its Opposition that the "substantial justice" factors support jurisdiction in Kansas.   However, its Opposition does not and cannot overcome the most significant factor, namely the severe burden on Defendants of being forced to litigate this case 1,500 miles from their location in California.   Plaintiff's cited cases, all dealing with motions involving defendants headquartered in neighboring or close states to Kansas, are inapplicable to the Los Angeles-based Defendants.   Moreover, contrary to the details in

---

[2] The fact that the Complaint identifies no tortious damage suffered by Maplan in Kansas is only confirmed by Plaintiff's belated attempt to "backfill" a claim of some damage in Kansas in the Godwin Declaration.   Mr. Godwin's declaration only further removes any causation of harm by these Defendants by stating that (1) any damage to Maplan was occasioned by Maplan's own independent decision to "divert cash away from priorities like manufacturing processes and paying suppliers for raw materials" (Godwin Decl., ¶ 15) and (2) that "the entire battenfeld-cincinnati corporate family [not Maplan] defaulted on the Bank Covenants" (*id.* at ¶ 16).

the Defendants' Motion, Plaintiff provides no quantification at all of witnesses and documents existing in Kansas.  Furthermore, Plaintiff argues that the grant of this motion will create "piece-meal litigation" while ignoring the fact that the Battenfeld Group has already created such piece-meal litigation by virtue of this lawsuit in Kansas and a concurrent, directly related lawsuit being pursued by Plaintiff's Chinese affiliate against Hebei Quanen in China.

In all of these circumstances, the dismissal of these claims for lack of jurisdiction in Kansas is fully warranted.

## II.   PLAINTIFF'S ARGUMENT ASSERTING A "CLOSELY-RELATED" CONDUCT" PRINCIPLE IS UNFOUNDED.

The primary argument made by Plaintiff in its Opposition is the novel assertion that the non-signatory parties are nevertheless bound to a forum selection provision in their contract where such parties are "closely related" to the contract and the disputes arising therefrom.  (Opp. at 11.)  While it is undisputed that forum law (i.e. Kansas law) controls adjudication of this jurisdictional motion in this diversity action, Plaintiff relies primarily on authority from outside the Tenth Circuit, with sole exception of the *Cole* case.  (*See* Opp. at 12.)[3]

---

[3] While the cases from the Seventh, Eighth, Ninth, and Eleventh Circuits relied upon by Plaintiff are inapplicable herein, they are also to be distinguished.  For example, in *TAAG Linhas Aereas de Angola v. Transam. Airlines, Inc.,* 915 F.2d 1351, 1354 (9th Cir. 1990), the non- signatory defendants were either explicit third-party beneficiaries of the contract or explicitly agreed to the foreign forum; in *Marano Enter. of Kan. v. Z-Teca Rest., L.P.,* 254 F.3d 753, 757, the non-signatory defendant was at the same time a shareholder, officer, and the director of the signatory; in *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir. 1998), the non- signatory defendants signed letters of credit for their signatory spouses; in *Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209-10 (7th Cir. 1993), the non- signatory defendants were owned 99% and 100% by the signatory defendant who was also both their President and

The sole Kansas case of *Cole* not only refutes any application of this "closely related" concept in the instant circumstances but, in fact, supports the Defendant's position that no jurisdiction exists based upon the Defendants' lack of contacts in Kansas. In *Cole*, a plaintiff Kansas trucking service company brought suit against a Utah trucking company defendant and a former employee asserting that the defendant's solicitation and hiring of the plaintiff's employee violated a non-compete contract containing a forum selection clause requiring any action to enforce the contract to be commenced in Kansas. *Cole*, 2013 WL 6008303 at *1. Upon discovery of the solicitation of this employee, the plaintiff Kansas corporation wrote letters to the defendants which notified them and provided a copy of the non-compete agreement, including the forum selection provision. *Id.* at *2.

In opposing a motion to dismiss on jurisdictional grounds by the Utah trucking company, the plaintiff asserted that the non-signatory defendant trucking company had made itself a "closely related party" to the non-compete agreement and that under the "closely related party" doctrine, it was bound by the forum selection provision even though it was a non-signatory. *Cole*, 2013 WL 6008303 at *4. While noting that other circuits have applied the doctrine "in one form or another" with "little discussion . . . of the due process implications of exercising jurisdiction over such non-signatories," the *Cole* court found "no Tenth Circuit cases on point." *Id.* In rejecting application of the "closely related" concept, the *Cole* court noted that the out-of-state defendant only

---

Chairman of their Board; and in *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993), the defendants admitted that the non-signatory defendants were "indispensable" to the signatory defendants.

became aware of the forum selection clause after it had engaged in the allegedly improper conduct of hiring the former employee and accordingly, defendant "had no contacts with Kansas and no reason to anticipate being sued in Kansas." *Id.* at *5. While the *Cole* court acknowledged that the defendant was apprised of the forum selection provision "within a few days of hiring Cole," it determined that this fact did not bind the defendants to the forum selection provision. *Id.* In doing so, the court stated:

> "Even if it was foreseeable to [the out of state defendant] . . . that it could be brought into litigation involving the non-compete provision, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."

*Id.* (emphasis added).

In these circumstances, the *Cole* court went on to find that the plaintiff had not cited any factual predicate for concluding that the defendant's actions were "expressly aimed" at Kansas or a Kansas resident, emphasizing that none of the allegedly tortious acts of the defendants occurred in Kansas and that all such acts occurred outside of Kansas. *Cole*, 2013 WL 6008303 at *6.

Even if there were any Tenth Circuit law supporting the application of this concept in this forum (which there are not), the exact same considerations leading to the *Cole* court's rejection of the concept apply with fatal and equal force in this case. At the time that these Defendants allegedly engaged in tortious conduct in Los Angeles, by allegedly misrepresenting Hebei Quanen's capacity to install the extrusion equipment and to pay Plaintiff's invoices to Plaintiff in the period from January 2012 through August 2012

(Compl. at ¶¶ 12-18, 20-22), the invoices containing the forum selection term and condition did not yet exist.  (*See, e.g.*, *id.* at ¶¶ 24, 27 (asserting that the Purchase Orders commenced in November 2012 and that Battenfeld US did not begin delivering extrusion equipment until March 31, 2013).)  Moreover, the Complaint and Plaintiff's Opposition makes no assertion that these moving Defendants were ever provided with, or made aware of this forum selection provision in the subject Hebei Quanen invoices.  In any event, even if they did have such knowledge, foreseeability of litigation in Kansas "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."  *Cole*, 2013 WL 6008303 at *5 (quoting *Worldwide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

In the final analysis, Plaintiff's reliance on this "closely related doctrine" is unavailing on the law and facts.[4]

## III.   THE MOVING DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION IN KANSAS.

### 1.   No Showing Exists that Defendants Purposefully Directed Tortious Conduct towards Kansas.

In order for the "purposeful direction" test to be met, it is well settled that defendants must commit acts "by which the defendant purposefully avails itself of the

---

[4] Similarly, Plaintiff's attempt to apply prior forum selection provisions in purchase agreements between JM Eagle and Plaintiff  (Opp. at 25) is equally unavailing.  No case is asserted for Plaintiff's argument that these prior purchase agreements are applicable to the current lawsuit against these moving Defendants in Kansas.  Moreover, Federal Courts have consistently rejected this argument.  *See, e.g., Johnson v. Barrier*, 2016 WL 3520157, *3 (N.D. Ill. June 28, 2016) (defendant does not waive its ability to challenge jurisdiction merely because it accepted personal jurisdiction in an earlier case); *Alkanani v. Aegis Def. Serv., LLC*, 976 F. Supp. 2d 13, 37 n.10 (D.D.C. 2014) (same).

1378461

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996). In this regard, "the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Anzures v. Flagship Rest. Group*, 819 F.3d 1277, 1280 (10th Cir. 2016) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (emphasis in original).

Even more significantly, it is well established that "a plaintiff's contacts with the forum State cannot be decisive in determining whether the defendant's due process rights are violated." *Walden,* 134 S. Ct. at 1119; *Rush v. Savchuck*, 444 U.S. 320, 322 (1980); *Anzures*, 819 F.3d at 1280 (emphasis added). "[T]he mere fact that [defendant's] conduct effected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 134 S. Ct. at 1126; *Anzures*, 819 F.3d at 1280; *see also Dudnikov v. Chalk & Vermillion Fine Arts Inc.*, 514 F.3d 1063, 1073 (10th Cir. 2008) ("the unilateral activity of another party is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction") (internal quotation marks omitted). In this regard, the mere foreseeability of causing injury in another state is not sufficient for the exercise of personal jurisdiction. *Trierweiler*, 90 F.3d at 1534; *see Dudnikov*, 514 F.3d at 1077. As Plaintiff acknowledges (Opp. at 18), this purposeful direction test requires that Kansas be the "focal point" of Defendants' alleged tortious conduct. *Far West Capital*, 46 F.3d at 1080; *see Dudnikov*, 514 F.3d at 1075.

In its Opposition, Plaintiff makes two factual arguments to meet this "purposeful direction" standard, both of which are unavailing.

First, Plaintiff solely relies upon the declarations of Mr. Wang and Mr. Liao to argue that (1) "JM Eagle and Mr. Wang reached out to, vetted, negotiated with, and ultimately picked Battenfeld US to be the supplier of extrusion equipment to Hebei Quanen" and (2) that "JM Eagle and Mr. Wang were in almost constant contact with the CEO of Battenfeld US in Kansas." (Opp at 19.) These statements reflect a profound misreading of these declarations. Contrary to Plaintiff's mischaracterization, these declarations attest to the fact that it was the Battenfeld Group, and most particularly, its German-based holding company affiliate BC Extrusion and its CEO Arnold—certainly not Battenfeld US—who continuously "reached out" to, and "negotiated" with, Mr. Wang and JM Eagle in Los Angeles, California to seek and obtain the extrusion piping supply opportunity. (Wang Decl., ¶¶ 7-19, 23-25; Liao Decl., ¶¶ 7-11.) These declarations are devoid of any conduct which would make Kansas a "focal point" of this transaction. Rather, the meetings in which these moving Defendants' alleged misrepresentations were made (Complaint at ¶¶ 12-14, 20-22), all took place in Los Angeles, and it was the CEO of the Plaintiff's German holding affiliate—not the Plaintiff in Kansas—who consistently exercised the power to approve the deal and "shook hands" on the deal in Los Angeles. (Wang Decl., ¶¶ 12-20, Exhs. B, C).

Moreover, it was the same CEO Arnold and his successor CEOs Mr. Von Capplin and Mr. Schley who thereafter repeatedly "reached out" and directed correspondence to JM Eagle and Mr. Wang in Los Angeles for further meetings to address the serious

problems when the supplied extrusion equipment failed to work.  (*See* Wang Decl., ¶¶ 19-26, Exhs. D-G.)  While Mr. Waldhauer as CEO of Battenfeld US happened to attend these meetings, he was not a decision-maker in consummating the deal between the parties.  (*Id.*, ¶¶ 16-17, 19-26; Liao Decl., ¶¶ 9-17.)[5]  The fact that these moving Defendants' contacts with the decision makers in Germany happened to "affect[] plaintiffs with connections in the forum State does not suffice to authorize jurisdiction." *Walden*, 134 S. Ct. at 1126; *Anzures*, 819 F.3d at 1280; *Far West Capital*, 46 F.3d at 1080.

Second, Plaintiff contends that Mr. Wang and JM Eagle's alleged direction not to pay invoices owed to Battenfeld US with the knowledge that this would "force Battenfeld US and the entire battenfeld-cincinnati corporate family into" breaching its bank covenants shows a purposeful direction of their conduct to Kansas.  (Opp. at 19, 21.) However, Plaintiff's own Complaint belies any such purposeful direction of tortious conduct towards Kansas because it focuses the alleged injury from these Defendant's

---

[5] Plaintiff argues that the statements in the Wang and Liao Declarations that BC Extrusion CEO, Mr. Arnold was the leader and decision-maker in the 2012 meetings and in the subsequent interactions regarding the supply of the extrusion equipment are without personal knowledge.  (Opp. at 3-4 n.1.) Their assertion is wrong and belied by the pertinent correspondence exchanged directly with Mr. Arnold (and his successor CEOs) on these key issues.  (*See* Wang Decl., Exhs. B-G.)  Mr. Wang and Mr. Liao were personally involved in these interactions and their observance of Mr. Arnold's conduct and status are proper.  (Wang Decl., ¶¶ 9-10, 16, 18-19; Liao Decl., ¶¶ 9-11, 13-15.)  Conversely, Mr. Godwin's conclusory statement in his declaration that Maplan's prior CEO was principal contact for Mr. Wang and JM Eagle regarding this project fails to demonstrate any personal knowledge of this assertion.  (Opp. at 17-18; Godwin Decl., ¶9.)  Mr. Godwin only became President and CEO of Maplan on January 1, 2017 (Declaration Sean Riley, Exh. A) and his declaration provides no insight as to his "personal knowledge" of events occurring years before.

alleged tortious conduct on the Battenfeld Group principals in Europe—not Battenfeld US.

Specifically, Plaintiff alleges that Mr. Wang and JM Eagle caused bank covenants entered into between the Battenfeld Group principals in Europe and West LB Germany "as lead arranger of a credit consortium" (Compl. at ¶42) to be violated, thereby causing the "ultimate parent of the battenfeld-cincinnati corporate family" Shogun to lose the expected sale of the "battenfeld-cincinnati corporate family for tens of millions of Euros" (Compl. at ¶47) whereupon, Mr. Wang and JM Eagle allegedly offered to purchase "the battenfeld-cincinnati corporate family" at a "rock-bottom, deflated price." (Compl. at ¶ 48.)

No doubt recognizing that these express allegations place the alleged injury and harm from these Defendants' alleged tortious conduct at locations in Europe, far removed from Kansas, Plaintiff attempts in the declaration of its new CEO Paul Godwin to explain some damage in Kansas. (*See* Godwin Decl., ¶¶ 15, 16.) However, Mr. Godwin's statements only further remove any causation of damage away from these Defendants and from Kansas. Specifically, Mr. Godwin's declaration now attests that Battenfeld US took independent actions to "divert cash away from priorities like manufacturing processes and paying suppliers for raw materials to satisfy the Bank Covenants" (*id.*, ¶ 15) but ultimately, "the entire battenfeld-cincinnati corporate family defaulted on the Bank

Covenants." (*Id.*, ¶ 16 (emphasis added).)[6]  Clearly, the <u>entire</u> battenfeld-cincinnati

corporate family's default on its bank covenants is not an event restricted to Maplan in

Kansas.

Mr. Godwin's declaration does not attest to the actual defaults by affiliates of the

international conglomerate Battenfeld Group, which occasioned the default on the bank

covenants.  However, it is clear that the entire battenfeld-cincinnati corporate family's

default on the bank covenants and the alleged consequent loss of Shogun's sale of the

entire Battenfeld Group involves harm in locations far removed from Kansas.

In the final analysis, Plaintiff's Opposition does not show any purposeful direction

of either conduct or harm occasioned by such conduct to this forum, and accordingly, no

specific jurisdiction can exist.

### 2.  No Contacts in Kansas By These Defendants Give Rise to the Asserted Torts.

In addition to the "purposeful direction" requirement, due process further requires

that Plaintiff's injuries must "arise out" defendant's contacts with the forum jurisdiction.

*Dudnikov*, 514 F.3d at 1078.  In this regard, the Supreme Court has recognized that the

relationship between the defendant and the forum state "must arise out of contacts that

the 'defendant *himself*' creates with the forum State," and those contacts must be "with

the forum state itself, not the defendant's contacts with persons who reside there."

---

[6] It clearly stretches credulity to the maximum to assert, as Plaintiff does, that the non-payment by Hebei Quanen of $4 million out of $38 million total invoices somehow brought about defaults on bank covenants jeopardizing the "entire battenfeld-cincinnati corporate family."  (*See* Motion at 12-13; Wang Decl. ¶ 24, Exh. F.)  Nevertheless, this is the only "connection" raised by Plaintiff between any tortious conduct by these Defendants and the asserted damages being claimed herein.

*Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original).

While the law is unsettled in the Tenth Circuit as to whether the "but for" or "proximate cause" approach must be used in this context, the leading cases have focused upon the "proximate causation" test because satisfaction of this test necessary encompasses "but for" causation.  See, *Newsome v. Gallacher*, 722 F.3d 1257, 1270 (10th Cir. 2013) ("We have so far refused to choose one test over the other . . . and we still do not need to pick between the two to resolve this case.  Here [plaintiff] satisfies the more restrictive proximate cause test."); *Dudnikov*, 514 F.3d at 1079 ("we are satisfied that either [causation] theory . . . would support a determination that plaintiffs' cause of action arises from the defendants' contact with [the forum state]").

In the Opposition, Plaintiff argues that both of these alternative approaches are met because (1) Battenfeld would not have entered into the Purchase Agreements with Hebei Quanen and provided extrusion equipment to it "absent Defendants' representations to Battenfeld US" (citing Compl. at ¶¶ 3, 12, 16, 22) and (2) Battenfeld US's harm also resulted from Defendants' alleged direction to Hebei Quanen not to pay outstanding amounts owed to Battenfeld US.  (Opp. at 23.)  Plaintiff's arguments are unavailing because they fail to identify any conduct by Defendants in Kansas wherein misrepresentations or directions not to pay Battenfeld US were made.  Rather, the meetings wherein these misrepresentations were allegedly made, as identified in Plaintiff's Complaint (at ¶¶ 3, 12-18, 20-22), all occurred in Los Angeles, and similarly, any directions by Mr. Wang or JM Eagle related to installation or payment for extrusion

equipment occurred in Los Angeles (where they reside) or in China (where the extrusion equipment was all delivered).  There is no conduct by these Defendants allegedly giving rise to either the fraud or intentional interference claim which occurred in Kansas. Indeed, neither Mr. Wang nor any representative of JM Eagle was ever present in Kansas for any reason related to the supply of this extrusion equipment at all.  (Wang Decl., ¶ 20; Liao Decl., ¶ 9.)  In these circumstances, the failure by Plaintiff to meet this necessary element for personal jurisdiction stands as uncontested.

## IV.   SUBJECTING MR. WANG AND JM EAGLE TO JURISDICTION IN KANSAS WOULD OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.

In weighing the five factors bearing upon the reasonableness of exercising jurisdiction in this context, it is well settled that the "weaker the plaintiff's showing on minimum contacts, the less the defendant need show in terms of unreasonableness to defeat jurisdiction."  *Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006).  We address Plaintiff's arguments bearing upon these factors below.

### 1.   The Burden Imposed on These Moving Defendants of Litigating in Kansas is Substantial.

In the Tenth Circuit, burden is the single most important of the five factors.  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1096 (10th Cir. 1998).  That is especially relevant here, where there are two California defendants in contrast to a single Kansas plaintiff.

Plaintiff's assertion that Defendants must show a burden of litigating in Kansas equating to a deprivation of due process in order to meet this factor is simply wrong

where the plaintiff has made a weak showing of minimum contacts.[7]  As recognized by this Court in *Vestring v. Halla*, 920 F. Supp. 2d 1189 (D. Kan. 2013) —and ignored in the Opposition—this very Court has found that the burden under this factor is low where the contacts with Kansas raised by the Plaintiff are "weak." *Id*. at 1196  Indeed, in *Vestring*, this Court noted that the defendant's contacts with Kansas were weak, that every alleged breach of contract and tortious act or omission occurred outside of Kansas, and that all witnesses and material documents, with the exception of plaintiffs themselves were located out of state.  *Id*.

The same "weak" factors addressed in *Vestring* also exist in this case. Specifically, there is no conduct by Defendants in Kansas giving rise to the causes of action at issue or the injury claimed; the subject matter of the dispute at issue involves an arrangement made in California with the German holding company of the Battenfeld Group to supply extrusion equipment to China; and the bulk of the documents and witnesses are in California and China, not Kansas.  (Liao Decl., ¶¶ 18-19)  Thus, the amount of burden Defendants would need to show under this factor is "low."  *Vestring*, 920 F. Supp. 2d at 1196.

---

[7]  To support the proposition that the burden must constitute a "deprivation of due process," Plaintiff cites this Court to *Brooke Credit Corp. v. Tex. Am. Ins., Inc.*, 2007 WL 1586082, *4-*5 (D. Kan. May 31, 2007), where, in contrast to *Vestring* and the present matter, "minimum contacts" was <u>strongly</u> established for the defendant who stole customer premiums intended for Kansas and tortiously interfered with Kansas contracts.  *Brooke Credit*, in turn, bases the proposition on *Rainy Day Books, Inc. v. Rainy Day Books & Cafe, L.L.C.*, 186 F. Supp. 2d 1158, 1166 (D. Kan. 2002) in which "minimum contacts" was again strongly established where the defendant maintained a website infringing on the plaintiff's trademark and sold to Kansas residents after being informed of the infringement.

Plaintiff raises several arguments for purported lack of burden on the Defendants which are easily refuted.

First, Plaintiff cites cases involving defendants located in Texas and Louisiana, for the proposition that Kansas courts have recognized that "defending a suit in a foreign jurisdiction is not as burdensome as in the past." (Opp. at 24.)[8] Clearly, the burden imposed on defendants in Texas and Louisiana in having to litigate in Kansas is less than the burden imposed herein, where these two Defendants (not just one) are located at the extreme western edge of the country far distant from Wichita, Kansas.

Second, Plaintiff relies on a case involving an Internet service provider that operated in every state "in the northeastern and mid-Atlantic United States," for the proposition that "large interstate companies are now accustomed to conducting business and litigation in multiple states," *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1246, 1249 (10th Cir. 2000). (Opp. at 24-25.) The burden imposed on Mr. Wang (who resides in California) and JM Eagle (headquartered in California with one

---

[8] *See Brooke Credit*, 2007 WL 1586082 at *5 (Texas); *Am. Builders & Contractors Supply Co., Inc.*, 2006 WL 3533090, *3 (D. Kan. Dec. 7, 2006) (Louisiana). Furthermore, even for states close to Kansas, although *Brooke Credit* and *Am. Builders* recognize the fact that litigating in a foreign forum is less burdensome than it was before the Internet, they both recognize that there is still a burden on the defendant in litigating in a foreign forum. *Id.* And despite the advent of the Internet, the Tenth Circuit's guidance in *OMI Holdings* is still imperative: "While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *OMI Holdings*, 149 F.3d at 1096; *Servi-Tech, Inc. v. Burmeister*, 2016 WL 5944502, *3 & n.34 (D. Kan. Oct. 13, 2016) (quoting *OMI Holdings* while recognizing that litigating in a nearby state or a state where defendant is "economically active" carries less of a burden).

regional office in New Jersey and only manufacturing plants in other states) (Wang Decl. ¶¶ 2-3) exceeds the burden on the truly multistate Bell Atlantic Internet Solutions.[9]

Third, Plaintiff argues that these Defendants have purportedly "already consented to personal jurisdiction in Kansas" based upon their entry into previous purchase orders with Kansas consent to jurisdiction provisions. (Opp. at 25.) These prior purchase orders are unrelated to the instant purchase orders for several reasons. First, Defendant Mr. Wang did not personally enter into or execute these prior purchase orders. Nor did he do so in the instant case (See Goodwin Decl. ¶¶ 7-8, Exh. A, B). Moreover, with respect to JM Eagle, the prior purchase orders relate to purchases of equipment from Maplan. However, it is undisputed that JM Eagle did not purchase any equipment from Maplan in the instant case and no claim for breach of contract is asserted against either of these Defendants. Moreover, as a matter of law, Plaintiff's proposition is also unfounded. While Plaintiff cites no legal authority for this proposition, Federal Courts have consistently rejected this argument. *See, e.g., Johnson*, 2016 WL 3520157 at *3 (defendant does not waive its ability to raise personal jurisdiction questions merely because it accepted personal jurisdiction in an earlier case); *Alkanani*, 976 F. Supp. 2d at 37 n.10 (same).

---

[9] Furthermore, as with *Brooke Credit* and *Rainy Day Books*, above, the appellate court found strong "minimum contacts" because the defendant had injured a Kansas company in Kansas by routing its Internet traffic through the plaintiff's computer servers, which it held was "a prima facie showing that defendant purposefully directed its conduct at the forum state." *Intercon*, 205 F.3d at 1245-46, 1247-48. No such presence in, or purposeful direction of activities in Kansas exists in this case.

Fourth, Plaintiff argues that JM Eagle's "locations" in neighboring states to Kansas purportedly means that it will experience no undue burden litigating in Kansas. (Opp. at 25.)  As the supporting cases demonstrate,[10] the locations referenced in these cases are a far cry from the locations identified in JM Eagle's website.  These JM Eagle "locations" are manufacturing plants (Wang Decl., ¶2) —they are not locations that can form the basis for complex litigation in Kansas, as was the case in these cited authorities.[11]

Finally, Plaintiff argues that JM Eagle's prior litigation in the Tenth Circuit indicates that "any allegation of burden is vastly overstated." (Opp at p. 26)  Once again, the case of *Crisler* relied upon by Plaintiff is completely unavailing as it involved a

---

[10] The cases Plaintiff cites to support this proposition (Opp. at 25) highlight the very reason why it does not apply in this case.  In *Crisler v. Matthews Richards Healthcare Mgmt., LLC*, 2014 WL 4261403, *4 (D. Kan. Aug. 28, 2014), Missouri was the "home forum" of the defendant.  In *Jake's Fireworks, Inc. v. Sky Thunder, LLC*, 2017 WL 2501069, *1, *4 (D. Kan. June 9, 2017), the defendant's principal place of business was Indiana, "within driving distance of Kansas City," and the sole member of the LLC resided in Indiana.  In contrast, JM Eagle's principal place of business is California and Wang resides in the same, which is not "within driving distance" of Wichita, Kansas.

[11] Furthermore, *Crisler* as much as suggests that its holding would come out differently under the facts in the instant case.  Crisler explicitly notes that "distance and financial burden defendant will incur litigating in the plaintiff's chosen forum" are "important considerations" and reaches the conclusion that while defendant would "have to litigate outside its home forum, Kansas is a neighboring forum to Missouri." *Crisler*, 2014 WL 4261403 at *4.  And as even Plaintiff notes in its Opposition (Opp. at 26), the defendant in *Crisler* had previously intervened in the plaintiff's personal injury case in Kansas state court stemming from the same transaction.  *Crisler*, 2014 WL 4261403 at *4.  Moreover, *Crisler* cites not only the rule mentioned above from *OMI Holdings*, but *Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 575, in which the court found that the burden factor still favored the Virginia defendant even though the other forum option was yet another non-neighboring foreign forum (Massachusetts).  Here, where California is not a neighboring forum, where California is the only other logical forum, and where Defendants have not been involved in any litigation in Kansas resulting from Plaintiff's transaction with Hebei Quanen, *Crisler* would likely have found the burden factor weighing in Defendants' favor to deprive Defendants of due process by requiring them to litigate in Kansas.

situation in which the defendant actually intervened in litigation in Kansas *Crisler, supra* at \*4, a far cry from the instant case where JM Eagle is being sued in Kansas by Plaintiff.

Overall, it is clear that the substantial burden imposed on two Defendants by having to litigate in the faraway forum of Kansas meets the low standard needed for this factor.

### 2.   The Actions By Plaintiff's Corporate Affiliate in China Undermines Kansas' Interest in Resolving This Dispute.

In its Opposition, Plaintiff's sole argument on this point is that Kansas has a "manifest interest" in resolving disputes with injuries occasioned to a Kansas resident. (Opp. at 26.)  However, as set forth in Section III above, the actual tortious injury being asserted in this case relates directly to a sale by the Battenfeld Group ultimate parent of the "entire battenfeld-cincinnati corporate family" —not an injury focused in Kansas.[12] Moreover, Plaintiff ignores the fact that its China affiliate—also responsible for supplying a substantial portion of the $38 million in total extrusion equipment—is suing Hebei Quanen in China, not Kansas, thereby negating any implication that the Battenfeld Group wishes to resolve this entire dispute under Kansas law.  (Wang Decl., ¶ 27.)

---

[12] In contrast, all the cases cited by Plaintiff involve direct injuries to Kansas entities (Opp. at 26).  *See Intercon*, 205 F.3d at 1245-46 (defendant had injured a Kansas company in Kansas by routing its Internet traffic through plaintiff's computer servers, which it held was "a prima facie showing that defendant purposefully directed its conduct at the forum state"); *Brooke Credit*, 2007 WL 1586082 at \*1-\*4 (Kansas insurance agents stole customers from Kansas plaintiff's affiliate, signed them up with Texas defendant, and defaulted on loan provided by plaintiff; additionally, defendant was alleged to have violated a Kansas state court TRO against taking additional customers from plaintiff's affiliate); *Am. Builders*, 2006 WL 3533090 at \*1-\*2 (Louisiana defendant engaged in conspiracy with one of Kansas plaintiff's Kansas employees to breach fiduciary duties, misappropriate trade secrets, and divert plaintiff's customers to create a new Kansas company that would compete with plaintiff); *Digital Ally, Inc. v. Util. Assocs., Inc.*, 2014 WL 1385156, \*1 (D. Kan. Apr. 9, 2014) (defendant sent threatening letters to Kansas company's customers).

### 3.     Plaintiff May Receive Convenient Effective Relief in the California Forum.

In connection with this factor, Plaintiff argues that it purportedly can only litigate this matter in Kansas because "the majority of its witnesses and documents relevant to the issues raised in this matter are located in Kansas." (Opp. at 27.)  Despite making this contention, Plaintiff has not identified any witnesses or the extent of any documents existing in Kansas needed for this litigation.  (*See* Godwin Decl., ¶ 4)  In contrast, the Liao declaration (at ¶¶ 18-19) does identify the number of witnesses and the substantial extent of documents existing in California, which would be far more readily available for purposes of this litigation in California.  Plaintiff does not identify any factor which would harm its ability to obtain prompt and effective relief in California as opposed to Kansas.

Moreover, once again, Plaintiff's own corporate affiliate in China has already created two forums of related litigation against Hebei Quanen, one in Kansas and the other in China.  (Wang Decl., ¶ 27.)

### 4.     California, Not Kansas, Is the Most Efficient Location for Resolution of This Dispute Based on Witnesses, Documents, and Convenience.

In support of litigating this matter in Kansas, Plaintiff argues that its "witnesses and business records" are located in Kansas.  (Opp. at 28.)  However, unlike the presentation in the Liao declaration (at ¶¶ 18-19), Plaintiff does not quantify how many witnesses or the extent of any documents in Kansas at all.  Moreover, logic dictates that, based upon the extrusion equipment being provided in China and the extensive problems

experienced with such equipment in China, the main locations for documents will be California (where the meetings and other contacts relied upon by Plaintiff for their tort claims occurred) and China (where Hebei Quanen is located and the equipment problems occurred). Moreover, as set forth in Section III above, no conduct giving rise to the causes of action in this lawsuit occurred at all in Kansas.

Additionally, the choice of law provision relied upon by Plaintiff in this context (Opp. at 28) applies only in a contract between Plaintiff and Hebei Quanen and has no application to these moving Defendants. Finally, Plaintiff's argument regarding the avoidance of piece-meal litigation (Opp. at 28-29) is unfounded. Plaintiff's Chinese affiliate has already initiated litigation against Hebei Quanen in China and thereby created piece-meal litigation bearing upon this same dispute in two forums—Kansas and China. This creation of piece-meal litigation was directly caused by Plaintiff and Plaintiff's affiliate and should not be ascribed to Defendants. (*See* Wang Decl., ¶ 27.)[13]

---

[13] Where Plaintiff (or its affiliate in the Battenfeld family) has already brought suit against one of the defendants (Hebei Quanen) in another forum, it cannot now raise piece-meal litigation as a factor in its favor to force Defendants to litigate in another foreign forum. *See B.D. ex rel. S.D. v. Dazzo*, 2012 WL 2711457, *6, *8 (E.D. Mich. July 9, 2012) (federal court dismissed case where plaintiffs had already sued in state court) (cited favorably by *Beyer v. Nelson*, 2013 WL 11983776, *3 (W.D. Tenn. Apr. 5, 2013); *see also Sisler v. West*, 570 F. Supp. 1, 3 (S.D. Iowa) (same where plaintiff filed suit in state court eighteen months before filing in federal court). Furthermore, where, as here, the Defendants' home state is a viable forum, it is "circular" for Plaintiff to say that the litigation is piece-meal because it insists that the suit be tried in Plaintiff's home state. Because all negotiations took place in California and because Hebei Quanen does not object to California jurisdiction based upon its previous suit in California (Declaration of Christopher Cox ("Cox Decl.") ¶3, Exh. A), California "is an available alternative for all parties." *Newsome*, 722 F.3d at 1274.

**5.    Resolution of This Claim in Kansas Will Adversely Affect Defendants' Rights to Have This Matter Adjudicated in California.**

Plaintiff's and its affiliates' abject failures to provide proper extrusion equipment has caused extreme damage to Hebei Quanen, including extensive loss of customers. (*See* Wang Decl., ¶ 22-26, Exhs. F, G.)  In addition, JM Eagle's efforts to develop a strong presence in China for the supply of plastic piping has been severely compromised by Plaintiff's failure to supply competent extrusion equipment.  JM Eagle has every right to pursue counter-claims for the damages it has suffered through the defective extrusion equipment supplied by Plaintiff for which Hebei Quanen paid millions of dollars, only to lose customers.  These claims are proper for adjudication in California, based upon the injuries sustained by the California domiciled corporation, JM Eagle.

In this regard, Plaintiff also mischaracterizes the jurisdictional order made in California proceedings initiated by Hebei Quanen in an effort to diminish California as the proper forum for the claims against these Defendants (Opp. at 29.)  Contrary to Plaintiff's assertion that the California court "already declined to exercise jurisdiction over Hebei Quanen's allegations relating to the Purchase Agreement at issue here" (*id.*), the truth is that the California court only declined to exercise jurisdiction over claims against BC Extrusion for product liability involving the subject extrusion equipment. (*See* Cox Decl., Exh. D.)  This Order did not remotely address at all the proper jurisdiction in California courts of the instant tort claims by Maplan against these

Defendants.  Indeed, neither Maplan nor these Defendants were even parties to the California proceedings.  (*Id*.)

## V.   IN THE EVENT THAT THE COURT IS INCLINED TO DENY THIS MOTION, THEN JURISDICTIONAL DISCOVERY IS REQUESTED.

Based upon the authority cited in Plaintiff's own Opposition (Opp. at 29), these moving Defendants respectfully request the opportunity to conduct jurisdictional discovery in the event that the Court is inclined to deny this motion.  In this regard, a primary area for discovery will be, among other matters, the nature and circumstance of the default by the entire battenfeld-cincinnati corporate family under the bank covenants established in Germany, including the relevance of the $4 million in unpaid invoices owing to Plaintiff to such default.

## VI.   CONCLUSION

For all of the reasons stated herein and in these Defendants' moving papers, Mr. Wang and JM Eagle respectfully submit that their Motion to Dismiss For Lack of Jurisdiction should be granted in its entirety.

DATED:  August 18, 2017       ADAMS JONES LAW FIRM, P.A.

By /s/ Monte A. Vines
Monte A. Vines, SC #11044
1635 N. Waterfront Parkway, Suite 200
Wichita, KS 67206
Phone: (316) 265-8591 Fax: (316) 265-9719
mvines@adamsjones.com
      and
Patricia L. Glaser
Sean Riley
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Phone: (310) 553-3000
Fax: (310) 556-2920
Email: pglaser@glaserweil.com
      sriley@glaswerweil.com

*Attorneys for Defendants Walter Wang and*
*J-M Manufacturing Company, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 18, 2017, this pleading was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to those requesting notice and other interested parties via the CM/ECF system; and that a copy of this document was mailed by first class mail, postage prepaid and properly addressed, to all non-CM/ECF participants.

/s/ Monte A. Vines, SC #11044

1378461